Opinion issued August 10, 2021



**In The**

# Court of Appeals

**For The**

# First District of Texas

—————————————

**NO. 01-19-00302-CV**

—————————————

**HICHAM WATANABE, Appellant**

**V.**

**SUMMIT PATH PARTNERS, LLC; HOCINE AITMOHAND; A. J. AHMED; AND EDWARD HUA, Appellees**

———

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-40945**

———

## O P I N I O N

This is a premises liability case. Hicham Watanabe was injured in an assault in a parking lot. He sued his employers as well as the owner and the operator of the parking lot. The defendants filed multiple motions for summary judgment. The trial court granted take-nothing summary judgment in favor of each of the

defendants. On appeal, Watanabe contends that the trial court erred by entering these summary judgments.

We affirm.

## Background

### I.    Ownership, possession, and use of the premises

Defendant Summit Path Partners, LLC owns property on the north and south sides of Nett Street in Houston, Texas. At the relevant time, the property on the north side of Nett Street, 4709 Nett Street, consisted of two parking lots, separated by a building.[1] The property on the south side of Nett Street included 4701 Nett Street, a building operated as the Nox nightclub, another building beside the Nox nightclub, and parking adjacent to both buildings.

At the time of Watanabe's assault, 4709 Nett Street was leased to Hocine Aitmohand, who operated two self-parking lots on the property. He employed attendants for each of his two parking lots. The Nox nightclub, 4701 Nett Street, was leased to EA-BBC, LLC, whose members were A.J. Ahmed and Edward Hua.

Nox offered valet parking, which Watanabe managed. He earned about $60 per night and worked about four nights a week. Watanabe testified by deposition

---

[1]    On appeal, the record includes references identifying the property on the north side of Nett Street as 4709 Nett Street, 4700 Nett Street, 4709 Allen Street, and the north lot. There is no dispute that the assault, which is the subject of the underlying suit, occurred on the property on the north side of Nett Street, which was used at the time as a parking lot.

that he never personally parked cars; instead, he collected money from patrons when they pulled up near the nightclub building requesting valet service, managed others who parked cars, and delivered the money to Ahmed or Hua. Watanabe also testified that on busy nights, he paid Aitmohand or his parking attendant for the right to valet park cars in the 4709 Nett Street parking lots. He said that he had done so on the night he was assaulted.

## II.    The assault

Watanabe was working as a valet on the night of Tuesday, March 26, 2013. At about 2:30 a.m. the next morning, as Nox closed to customers, Watanabe prepared to bring a box with "a few keys" into the nightclub. He noticed that, across the street, one of Aitmohand's parking lot attendants, Samsung, had been accosted by four men, who were agitated and yelling. Watanabe testified:

> I heard Samsung. I heard yelling and I was just across the street . . . I saw Samsung, [Aitmohand's parking attendant], surrounded by four guys. . . . He was really standing, like, right here in front of his parking lot, just in front of his parking lot, really on the curb. . . . Exactly across the street. . . . I saw him really scared, like very scared, and the guys were yelling at him, was jumping at him, and I knew— like right away, I knew he was really in trouble right away and I couldn't just, you know, walk away . . . .

Watanabe crossed the street and approached the men to deescalate the situation. The four men informed Watanabe that someone had broken into their cars, which were parked in the other of Aitmohand's two parking lots. Although Samsung was still there, the other parking lot's attendant had already left.

3

Watanabe said that the men "asked Samsung to follow them" back to their cars in the other lot. When Samsung refused to go with the men, Watanabe agreed to do so. Watanabe testified by deposition:

> And I said, "You know, guys can you just show me the car, you know? I might help you, you know. I mean, you know, we're going to fix you—you know the owners. The owner club and—and [Aitmohand], you know hey can fix that for you, so no worries." So I was—I took him away from him because they were really—I mean, the way how they were talking and the way how they were mad, I mean, they were like—they were—you know, they were all, like, fight with him and he's an old man . . . .

Watanabe followed them to the back of the other parking lot where their cars were parked. He testified: "It was really dark." As they approached the two damaged cars, the men asked who would repair their cars, and they declined Watanabe's offer to contact the police. When they arrived at the cars, Watanabe saw two cars with significant amounts of broken glass. He commented on the amount of damage, and then one of the men, later identified as Terrance Williams, punched him in the eye. After momentarily blacking out, Watanabe returned to the Nox nightclub. Watanabe said that nobody there would call for emergency services on his behalf. Bleeding and unable to see out of one eye, he drove home. After arriving home, his wife ensured that he was taken by ambulance to a hospital; he was later transferred to another hospital, where he underwent surgery for broken facial bones and damage to his eye and spent several days recuperating.

Williams later pleaded guilty to assault, and he was sentenced to four years of probation. He was also ordered to pay Watanabe $7,000 in restitution.

## III.   Watanabe's lawsuit

### A.   Pleadings

In July 2014, Watanabe filed suit against Summit Path, Hocine Aitmohand, A. J. Ahmed, and Edward Hua for damages "caused by criminal conduct committed by Terrance Williams." At no point, however, did Watanabe sue Williams, who actually perpetrated the assault. Watanabe alleged that:

- he was an invitee on the premises owned by Summit Path,

- the assault was foreseeable to Summit Path and Aitmohand due to the high rate of violent crime in the area,

- Summit Path was negligent for failing to provide adequate lighting and trained security guards,

- Ahmed and Hua failed to use ordinary care in providing a reasonably safe workplace,

- Ahmed and Hua were negligent for failing to provide adequate lighting and trained security guards,

- These acts and omissions were the proximate cause of the injuries that arose from his assault.

The original petition was not accompanied by a request for disclosure. The defendants answered, and all defendants designated Williams a responsible third party under the provisions of the Civil Practice and Remedies Code.[2] Watanabe

---

2       *See* TEX. CIV. PRAC. & REM. CODE §§ 33.001–.017.

filed an amended petition on January 19, 2016, naming EA-BBC, LLC as a defendant.

## B. Motions for summary judgment

### 1. Ahmed & Hua's initial summary-judgment motions were denied.

In March 2015, Ahmed and Hua filed a traditional motion for summary judgment in which they asserted that they did not owe a duty to Watanabe because they had no control over Williams or the parking lot where the assault occurred. The trial court denied this motion. Ahmed and Hua filed another motion for summary judgment on January 4, 2016, arguing that they had been sued in the wrong capacity because they operated Nox as EA-BBC, LLC.[3] The trial court denied this motion as well.

### 2. Ahmed, Hua, and EA-BBC file traditional and no-evidence motions for summary judgment in September 2017.

On September 1, 2017, Ahmed, Hua, and EA-BBC filed a traditional motion for summary judgment. Ahmed and Hua argued that they did not owe Watanabe a duty of care at the time of the assault because they "did not personally own or occupy the premises where the alleged assault took place nor did they have control

---

[3] The assault occurred on March 27, 2013. Ahmed and Hua's second motion for summary judgment, which for the first time raised the identity of EA-BBC, LLC, was filed more than two years after the assault. The statute of limitations for premises liability claims is two years. *See* TEX. CIV. PRAC. & REM. CODE § 16.003; *S.E.A. Leasing, Inc. v. Steele*, No. 01-05-00189-CV, 2007 WL 529931, at *1 (Tex. App.—Houston [1st Dist.] Feb. 22, 2007, pet. denied) (mem. op.).

6

or supervision of the individual that committed the alleged assault." They also argued that they did not invite Watanabe to the premises where the assault occurred. EA-BBC argued that Watanabe's claims against it were barred by the statute of limitations.

Ahmed, Hua, and EA-BBC attached the following summary judgment evidence: Ahmed's affidavit, Hua's affidavit, and Watanabe's first amended petition. Both Ahmed and Hua averred:

. . . .

2. At all times on March 27, 2013 the nightclub called NOX was operated by the limited liability company EA-BBC, LLC registered with the Texas Secretary of State.

3. I am not an agent, director, or shareholder of Summit Path Partners, LLC.

4. I do not personally own or lease the property located at 4700 Nett Street, Houston, Texas 77007.

5. I did not individually contract or hire Plaintiff Hicham Watanabe as a valet driver on or about March 27, 2013.

6. At no time did I individually compensate Plaintiff Hicham Watanabe, monetarily or in any other form, for valet services performed by Plaintiff Hicham Watanabe on or about March 27, 2013.

7. At no time did I receive compensation in an individual capacity, monetarily or in any other form, for allowing Plaintiff Hicham Watan[a]be to perform valet services at 4700 Nett Street, Houston, Texas 77007 on or about March 27, 2013.

On September 1, 2017, Ahmed, Hua, and EA-BBC also filed a no-evidence motion for summary judgment. They asserted that there is no evidence of proximate cause or duty.

On January 16, 2018, Watanabe responded to the traditional motion for summary judgment, arguing that Ahmed, Hua, and EA-BBC did not conclusively prove that they were not liable for his injuries. He argued that there was a fact issue for the trier of fact, without identifying the fact issue. Watanabe attached as summary-judgment evidence his affidavit, and the trial court's two interlocutory orders denying earlier motions for summary judgment.

In his affidavit, Watanabe averred:

1. I was an employee of the defendant[s] Edward Hua, and Arif Ahmed on the night of March 27, 2013 when I valet parked cars at 4709 Allen Street Houston, TX 77007 and 4701 Nett Street Houston Texas 77007 (Nox nightclub). I valet parked cars at both locations at the behest and for the benefit of the Defendants Ahmed and Hua.

2. The Defendants Ahmed and Hua were aware that they had permission to park at 4709 Allen Street Houston, TX 77007, and 4701 Nett Street Houston Texas 77007 as long as they maintained it in a "clean and orderly manner." This was the case on March 27, 2013 when Plaintiff was assaulted. The same arrangements had been in place for more than a year.

3. Payments from valet customers at both locations were turned over to the defendants Hua and Ahmed every night I worked.

4. Summit Path Partners owned the property Nox was located on AND the property at 4709 Allen Street Houston, TX 77007 . . . on March 27, 2013 where the assault took place.

5. There was no lighting on the premises, or security. None of the defendants in this case provided lighting or security for the parking lot area, which includes Summit, the movant herein. The property owner's representative knew or should have known of these facts. Summit was also aware or should have been aware through a reasonable inquiry that Nox was a night club and that the cars of patrons were routinely parked on the lot at 4709 Allen Street Houston TX 77007 where no lighting and no security existed. *Nox night club* only had permissive use of the parking lot and *did not retain control of the premises*.

Watanabe responded and attached as summary-judgment evidence: (1) his third amended petition, (2) his affidavit, (3) Ahmed and Hua's first two summary-judgment motions and the orders denying them.

### 3. Summit Path

In July 2017, Summit Path filed a motion for summary judgment arguing that it was not in possession of the premises at the time of the assault because the parking lots were leased to Aitmohand and the nightclub lease had been transferred to EA-BBC, LLC. Summit Path also argued that it had no duty to protect Watanabe from the criminal acts of Williams. Summit Path's summary-judgment evidence consisted of (1) a copy of Watanabe's original petition, (2) an affidavit from John De Meritt, the managing member of the successor-in-interest to Summit

9

Path, ShepNett Holdings LLC, and (3) the commercial lease pertaining to 4701 Nett Streeet.

De Meritt explained the history of the lease and the entities to which it had been assigned.[4] He also averred that EA-BBC had sole management and control over 4701 Nett Street, including "signs and lighting" and access, and that Summit Path had no control over EA-BBC, the Nox Club, or its parking lot.

---

[4] De Meritt averred:

> On September 1, 2010 Summit Path Partners LLC became the lessor (landlord) of the property located at 4701 Nett Street, Houston, TX 77007. The original lease had been entered into between AADK Ventures, LLC, (lessee) and the owner of the property at that time, Stony Leather, Inc. (lessor).
>
> On September 1, 2010, per the property purchase terms the lease was assigned to Summit Path Partners, LLC. This original commercial lease with AADK was dated June 18, 2008 and was still in effect at the time that Summit Path became the new owner and lessor of the property. The lessee (Tenant), AADK Ventures, Inc., operated a club on the property called Nox. The Lease of the property located at 4701 Nett Street, Houston, TX 77007 continued on the terms set forth in the original lease. The lessee, AADK (tenant) paid its monthly rent to Summit Path.
>
> In 2011, AADK sold the club called Nox to EA-BBC, the corporation of which Edward Hua (one of the co-defendants) was an officer. EA-BBC assumed the lease from ADDK [sic]. This original lease and its terms continued between EA-BBC and Summit Path until 2014. EA-BBC (now owner of Nox Club) paid its monthly rent for the property lease to Summit Path. This is the lease that was in effect on March 27, 2015, [sic] the date of the alleged incident made the subject of the Plaintiff's Original Petition.

The lease for 4701 Nett Street included a provision specifying the use and hours of the premises, which stated: "The Property maintains operating hours of . . . 24/7/365. However, the use of the adjacent parking lot shall be restricted to 5 pm until 7 am Monday through Friday and 3 pm until 7 am on weekend days (Saturday and Sunday)." The lease also included the following special provision, which refers to an exhibit that is not part of the appellate record:

> Tenant may use the land shown on Exhibit #1 for the sole use of a parking lot and for only those hours as described herein and for no other purposes. The use of such land for parking shall be permitted for the same term as the Term set forth herein for the Leased Premises. The Land shall be maintained and keep [sic] in a clean and orderly manner at all times.

Watanabe filed a response to this motion for summary judgment. He argued that the assault occurred at 4709 Nett Street, not 4701 Nett Street. He argued that there were genuine issues of material fact regarding Summit Path's control over 4709 Nett Street that precluded summary judgment and that Summit Path's evidence regarding 4701 Nett Street did not establish its entitlement to summary judgment.

Watanabe attached his affidavit as summary-judgment evidence. In his affidavit, he averred that he was an employee of Ahmed and Hua on March 27, 2013, when he valet parked cars at both 4701 Nett Street and "4709 Allen Street (formerly 4700 Nett Street)." Watanabe averred that "Ahmed and Hua were aware that they had permission to park at 4709 Allen Street . . . formerly 4700 and 4701

11

Nett Street . . . as long as they maintained it in a 'clean and orderly manner.'" He averred that he collected money from valet customers and turned it over to Ahmed and Hua, that Summit Path owned both 4701 Nett Street and 4709 Allen Street, and that there was "no lighting on the premises, or security."[5] Summit Path objected to Watanabe's affidavit on the basis that it contains hearsay, but it did not obtain a ruling on this objection.

Watanabe also attached as summary-judgment evidence his amended petition, police records pertaining to the "beat" (2A50) that included Nox nightclub, and a map purportedly from the Harris County Appraisal District ("HCAD") that showed 4701 and 4709 Nett Street. Summit Path objected to the police records as irrelevant arguing that the incidents described were dissimilar to Watanabe's assault. Summit Path objected to the HCAD map based on hearsay due to the lack of a business-record foundation and the existence of "hearsay markings." Summit Path did not obtain a ruling on these objections.

Summit Path filed another motion for summary judgment in December 2017. Summit Path argued for summary judgment on no-evidence and traditional grounds. It asserted that there was no evidence that it (1) owed a duty to Watanabe, (2) breached a duty to Watanabe, or (3) proximately caused his injuries. Summit Path argued that it had no duty to protect Watanabe from the criminal act of

---

[5]     This is the same affidavit that Watanabe attached to his response to summary-judgment motion filed by Ahmed, Hua, and EA-BBC.

12

Williams because there was no evidence that the assault was foreseeable to Summit Path or its agents. Summit Path also argued that it was not in possession of the premises at the time of Watanabe's assault, and there is no evidence that it owed or breached any duty to Watanabe.

Summit Path also argued for summary judgment on traditional grounds asserting that, contrary to Watanabe's pleading, Watanabe was a trespasser not an invitee at the time of the assault. It argued that because the duty owed to a trespasser is minimal, it was not liable for the injuries caused by Watanabe's assault. Further, it asserted that it was not liable to Watanabe as a matter of law because it was not in possession of the premises at the time of the assault. It argued that Aitmohand was solely in control of the premises under their existing, oral, month-to-month lease. Summit Path also argued that it owed no duty to Watanabe, as a matter of law, because the assault was unforeseeable. In support of this ground, Summit Path offered police reports for the fewer than ten crimes that occurred at 4709 Nett Street over the three years preceding Watanabe's assault. Summit Path also argued that there was no causation, as a matter of law, because Williams was the cause of Watanabe's injuries.

In January 2018, Watanabe filed a response to Summit Path's December 2017 motion for summary judgment. He attached the following summary-judgment evidence to this response: his pleading, his affidavit, police reports, and

Ahmed and Hua's motion for summary judgment and the court order denying it. On January 22, 2018, Watanabe filed a motion for leave to supplement his summary-judgment evidence "past the seven-day notice requirement" with an affidavit from Robert Bell, whom Watanabe offered as an expert witness.[6] Bell averred that the assault was foreseeable because the location was in a high-crime area. He also averred that the assault could have been prevented by adequate lighting and employment of two uniformed police officers on the lot while the nightclub was open and past closing time.

Summit Path objected to Watanabe's use of his third amended petition as summary-judgment evidence. Ahmed, Hua, and EA-BBC objected to the affidavit of Robert Bell and moved to strike it. The trial court did not rule on either of these objections.

### 4. Rulings on motions for summary judgment filed by EA-BBC, Edwards, Hua, and Summit Path.

On January 25, 2018, the trial court granted the defendants' motions for summary judgment without specifying the grounds for the ruling. The trial court also dismissed all of Watanabe's claims and ordered that he take nothing. However, because Aitmohand had not, at that time, moved for summary judgment,

---

[6] The record does not include a ruling specifically granting leave to file the Bell affidavit, but the summary-judgment order granting the motion for summary judgment stated that the court considered "the motions, responses, arguments of counsel, pleadings on file, and evidence," and it was dated January 30, 2018, which was eight days after the Bell affidavit was filed.

in April 2018, the trial court granted Watanabe's motion to modify, vacated the January 2018 order, and granted take-nothing summary judgment in favor of Summit Path, EA-BBC, Ahmed, and Hua.

### 5. Aitmohand

In September 2018, Aitmohand filed a motion for summary judgment asserting that there was no evidence of proximate cause and challenging the element of duty. Watanabe responded but he did not attach summary-judgment evidence. Instead, he

> incorporate[d] by reference the arguments presented and the evidence filed in response to the multiple motions for summary judgment previously filed in this case. Specifically, Watanabe incorporates by reference the arguments and evidence that he filed into this case on April 13, 2015, January 19, 2016, September 5, 2017, and two (2) responses filed on January 15, 2018.

In January 2019, the trial court granted Aitmohand's motion for summary judgment, and Watanabe appealed. On appeal, Summit Path filed a responsive brief, and Ahmed, Hua, and EA-BBC filed a responsive brief. Aitmohand did not file a brief or appear in the court of appeals.

### Analysis

On appeal, Watanabe argues that the trial court erred by granting summary judgment in favor of (1) Summit Path, (2) Ahmed, Hua, and EA-BBC, and (3) Aitmohand. We consider general legal principles applicable to this case, and then we address each of Watanabe's contentions separately.

15

## I. Summary judgment standards of review

We review a trial court's summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). In doing so, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). If the trial court does not state the grounds upon which it grants summary judgment, an appellate court will affirm the judgment if any of the grounds set forth by the movant is meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

### A. No-evidence motion for summary judgment

A no-evidence motion for summary judgment under Rule 166a(i) is essentially a pretrial motion for directed verdict. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the non-movant's claim or defense. TEX. R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus.*, 286 S.W.3d at 310. The trial court is required to grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. TEX. R. CIV. P. 166a(i).

16

We review no-evidence summary judgments under the same legal sufficiency standard as directed verdicts. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). Under that standard, evidence is considered in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). A no-evidence challenge will be sustained when

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*King Ranch*, 118 S.W.3d at 751 (*quoting Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

To defeat summary judgment, the nonmovant is required to produce more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged elements. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). That burden is not met when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch*, 118 S.W.3d at 751 (*quoting Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). In

17

determining whether the nonmovant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the nonmovant, crediting such evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 822, 827.

## B. Traditional motion for summary judgment

To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84. "If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Lujan*, 555 S.W.3d at 84; *see Maldonado v. Maldonado*, 556 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

## II. Premises liability

### A. Premises liability is a special form of negligence.

The common-law doctrine of negligence consists of: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from the breach. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998).

"Depending on the circumstances, a person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner." *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016); *see Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). "When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply," but a "claim against a property owner for injury caused by a condition of real property generally sounds in premises liability." *Occidental Chem. Corp.*, 478 S.W.3d at 642, 644. "A complaint that a landowner failed to provide adequate security against criminal conduct is ordinarily a premises liability claim." *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998); *see West v. SMG*, 318 S.W.3d 430, 437–38 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

## B. Duty in premises liability cases depends on the status of the plaintiff.

The threshold question in a premises liability case is whether the defendant owes a duty to the injured plaintiff. *See Hillis v. McCall*, 602 S.W.3d 436, 440 (Tex. 2020). The existence of a duty is a question of law for the court to decide based on the facts of the case. *Id.* For a duty to exist, the defendant must have possession or control over the premises where the injury occurred. *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002). The nature of the duty owed depends on whether the plaintiff is an invitee, licensee, or trespasser. *Hillis*, 602

S.W.3d at 440; *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999) (plurality op.); *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 909 (Tex. App.—Houston [14th Dist.] 2009, no pet.).[7]

### 1. Invitee

"An invitee is 'one who enters the property of another with the owner's knowledge and for the mutual benefit of both.'" *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015) (quoting *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996); *accord Rosas v. Buddie's Food Store*, 518 S.W.2d 534, 536 (Tex. 1975); *Mayer*, 278 S.W.3d at 909. The duty owed by an owner or occupier of premises to an invitee is not that of an insurer. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000). An owner or occupier of land must use reasonable

---

[7]     In her dissenting opinion in *Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654 (Tex. 1999), Justice O'Neill explained the reason for the distinctions based on the plaintiff's status:

> The premises liability classifications reflect policy judgments carefully developed over time to balance the landowner's interest in the free use and enjoyment of his land against the interests of persons injured by the land's condition. The categories and their corresponding duties place rational limits on the liability of landowners, assuring that property owners do not become absolute insurers against all risk of injuries that others might sustain on their property. These distinctions afford a degree of certainty to what would otherwise be an amorphous standard of liability, and provide relatively predictable rules by which landowners and entrants may assess the propriety of their conduct.

5 S.W.3d at 670.

care to protect an invitee from known conditions that create an unreasonable risk of harm and conditions that should be discovered by the exercise of reasonable care. *Id.*; *Mayer*, 278 S.W.3d at 910. A landowner must make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware, but the invitee is not. *Austin*, 465 S.W.3d at 203. A landowner generally has no duty to warn invitees of hazards that are open, obvious, or known to the invitee. *Id.* at 204.

## 2. Licensee

A licensee enters and remains on a premises with the owner's consent and for the licensee's own convenience, or on business with someone other than the owner. *Mayer*, 278 S.W3d at 910 (citing *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 134 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). "The duty owed to a licensee requires that 'a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not.'" *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016) (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)). Absent willful, wanton, or grossly negligent conduct, a licensee-plaintiff must prove:

>  (1)  a condition of the premises created an unreasonable risk of harm to the licensee;

(2)    the owner actually knew of the condition;

(3)    the licensee did not actually know of the condition;

(4)    the owner failed to exercise ordinary care to protect the licensee from danger;

(5)    the owner's failure was a proximate cause of injury to the licensee."

*Payne*, 838 S.W.2d at 237.

### 3.    Trespasser

"A trespasser enters another's property without lawful authority, permission, or invitation." *Mayer*, 278 S.W.3d at 910; *see Mellon Mortg.*, 5 S.W.3d at 671 (J. O'Neill, dissenting) ("A trespasser enters another's property without express or implied permission."); *Tex.–La. Power Co. v. Webster*, 127 Tex. 126, 91 S.W.2d 302, 306 (1936) ("A trespasser is defined by Corpus Juris as follows: 'A person is a trespasser where he enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasure, or convenience, or out of curiosity, and without any enticement, allurement, inducement, or express or implied assurance of safety from the owner or person in charge.'"). "The only duty a premises owner or occupier owes a trespasser is not to injure him willfully,

22

wantonly, or through gross negligence." *Tex. Utils. Elec. Co. v. Timmons*, 947

S.W.2d 191, 193 (Tex. 1997).

**C.     Duty to protect others from third-party criminal acts**

"Generally, a person does not have a duty to protect others from third-party

criminal acts." *Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 17

(Tex. 2008); *Timberwalk*, 972 S.W.2d at 756; *West*, 318 S.W.3d at 438. The

exception to this rule, is that "property owners owe a duty to those who may be

harmed by the criminal acts [of third parties] only when the risk of criminal

conduct is both unreasonable and foreseeable." *Mellon Mortg.*, 5 S.W.3d at 655

(citing *Timberwalk*, 972 S.W.2d at 756 (holding that premises owner has duty to

use ordinary care to protect invitees from criminal acts of third parties when he

"knows or has reason to know of an unreasonable and foreseeable risk of harm to

the invitee")). This exception applies to a premises owner or operator who has

"retain[ed] control over the security and safety of the premises." *Timberwalk*, 972

S.W.2d at 756. To determine whether an unreasonable risk of criminal activity was

foreseeable to the defendant before the alleged criminal act occurred, we consider

the following factors:

> (1)     whether any criminal conduct previously occurred on or near
>           the property;
> (2)     how recently such conduct occurred;
> (3)     how often such conduct occurred;
> (4)     how similar the prior conduct was to the conduct that occurred
>           on the property; and

(5)    what publicity surrounded the occurrences to indicate that the land owner/occupier knew or should have known about them.

*Id.* at 757. Only after foreseeability has been established by the *Timberwalk* factors will a court determine the parameters of the defendant's duty. *Id.*

## III.   Summit Path

Summit Path filed two motions for summary judgment. The first was filed in July 2017, and it was drafted as if the assault occurred at 4701 Nett Street, the Nox nightclub. Summit Path argued that it had no duty to protect Watanabe against the criminal action of a third party because EA-BBC had sole control of the leased premises, and it attached summary-judgment evidence establishing that EA-BBC was the then-current lessee.

In its December 2017 motion for summary judgment, Summit Path argued that there was no evidence it owed Watanabe a duty, breached said duty, or proximately caused his injuries. Summit Path also moved for traditional summary judgment on the ground that it did not owe a duty to Watanabe. In support of this ground for summary judgment, Summit Path made various arguments including that (1) Watanabe was not an invitee, (2) Aitmohand had sole control of the premises, and (3) the assault was unforeseeable, and it therefore could not be held liable for Williams's crime.

Whether Summit Path owed a duty to Watanabe is determined by considering three questions: (1) did Summit Path retain control over the premises?

(2) was the risk of criminal activity foreseeable? and (3) was Watanabe an invitee, licensee, or trespasser?

### A. Summit Path retained some control of the premises.

First, Summit Path argued that it did not retain control over the premises because Aitmohand had sole control of the premises at the time of the assault. Its summary-judgment evidence included an affidavit from Kal Malik, the managing member of ShepNett Holdings LLC, which was formerly known as SummitPath Partners LLC. Malik averred that he had personal knowledge of the oral lease agreement between Summit Path and Aitmohand. He said that beginning in March 2012, Summit Path had an oral month-to-month lease agreement with Aitmohand for the property at 4709 Nett Street, which Aitmohand used to operate a valet and self-parking service. The lease gave Aitmohand exclusive use of the property "strictly between the hours of 5 PM and 6 AM and for no other purpose" except valet and self-parking. The lease was in effect on March 27, 2013, when Williams assaulted Watanabe. In addition, "[d]uring the term of the Lease, the Property was not subject to any other lease or similar agreements during the specified hours of the Lease." Malik averred that "Aitmohand was in sole control of the Property," and Summit Path "was not present and did not occupy the Property during Aitmohand's hours of operation while the Lease was in effect." He also said that

25

Summit Path "never gave [Watanabe] authorization to enter or use any of its properties."

Considering this evidence in the light most favorable to Watanabe, we conclude that a reasonable jury could infer that Summit Path retained control over the premises at issue during the hours that Aitmohand did not use the premises for his parking business. The summary-judgment evidence does not conclusively negate Summit Path's control over the premises. For the purpose of our duty analysis, we assume without deciding that Summit Path had control over the premises.

**B.    The risk of criminal activity was foreseeable.**

Second, we consider whether the risk of criminal activity was foreseeable. Whether the evidence demonstrates that an unreasonable risk of criminal activity is foreseeable is a fact-specific inquiry. *E.g.*, *Timberwalk*, 972 S.W.2d at 756; *Mayer*, 278 S.W.3d at 913, 919–22. In *Xiao Yu Zhong v. Sunblossom Gardens, L.L.C.*, No. 01-08-00470-CV, 2009 WL 1162213, at *3 (Tex. App.—Houston [1st Dist.] Apr. 30, 2009, pet. denied) (mem. op.), this court held that the assault and robbery of the plaintiff, who was a tenant at the defendant apartment complex, was not foreseeable under *Timberwalk* because the summary-judgment evidence failed to show any prior crime involving violence against a person on the premises or in the vicinity. 2009 WL 1162213, at *3; *see also Scurlock v. Pennell*, 177 S.W.3d 222,

26

226 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (summary judgment evidence failed to raise question of fact on foreseeability when nonmovant offered no evidence of number, recency, location, similarity, or publicity of prior burglaries). In *Mellon Mortgage*, the plurality held that the risk of violent crime in a parking garage was foreseeable, generally, when the summary-judgment evidence showed that in the two years preceding the plaintiff's sexual assault, "190 violent crimes, including rape and murder, were reported near the garage," equating to "a frequency of roughly one violent crime every four days." 5 S.W.3d at 657.

Most cases lie between *Xiao Yu Zhong* and *Scurlock*—where there was no evidence of relevant prior crime—and *Mellon Mortgage*—where there was abundant evidence of relevant prior crime. In most cases, there is some evidence of prior crime on or near the premises but not "roughly one violent crime every four days." *Id.* In these cases, courts have more carefully scrutinized the evidence offered to satisfy the *Timberwalk* factors in determining which specific crimes could make future violent crime foreseeable to a premises owner. *E.g.*, *Trammell Crow*, 267 S.W.3d at 13, 17 (holding that "repeated occurrences of theft, vandalism, and simple assaults . . . do not suggest the likelihood of murder" and further holding that even evidence of ten previous violent crimes were not "sufficiently frequent and similar [to the crime of murder] to give rise to a duty in this case"); *Mayer*, 278 S.W.3d at 921–22 (rejecting evidence of violent crimes

27

that occurred five years before murder of plaintiffs' decedents as too remote to make murder foreseeable and rejecting evidence that auto-related crime had nearly doubled in two years before murder as too dissimilar to make murder foreseeable); *see also Tex. Real Estate Holdings, Inc. v. Quach*, 95 S.W.3d 395, 398–99 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (courts generally rely on small geographic areas, such as one square mile from center point of premises, to determine whether crimes were in vicinity of the premises).

In response to Summit Path's July 2017 motion for summary judgment, Watanabe provided offense reports from the Houston Police Department from the "beat" that included Nox and the parking lot where he was assaulted and an affidavit from Robert Bell, whom Watanabe offered as an expert on crime. We consider this evidence in light of the *Timberwalk* factors.

From September 11, 2010 through March 16, 2013, there were nine crimes of violence committed at 4700 Nett Street or in the parking lot or road near 4700 Nett Street. Another 21 violent offenses occurred in the vicinity ranging from 0.2 miles from the premises where Watanabe was assaulted to 1.6 miles from it. Three of the offenses, including one domestic violence offense, occurred more than one mile from the premises. One of the offenses occurred at 4700 Nett Street on September 11, 2010, and the remainder of the offenses occurred between February 12, 2012 and March 16, 2013. All of the offenses were crimes of violence such as

assault, aggravated assault, robbery by force, and aggravated robbery. While some crimes involved the use of firearms, others involved punching or physical assault.

Disregarding the domestic violence offense, the 2010 offense, and the two additional offenses that occurred more than one mile away from the premises at issue in this case, there were 26 violent offenses in the vicinity of parking lot where Watanabe was assaulted between February 12, 2012 and March 16, 2013, equating to roughly one violent offense every 15 days.

Watanabe also relied on an affidavit from Robert Bell, who averred that he had "over twenty years of experience as a Houston Police Sergeant, and officer supervising and coordinating security for night clubs throughout the Houston area." He opined that the parking lot where Watanabe was assaulted "and the whole Washington Avenue Night Club Corridor is in a High Crime area." He also stated his opinion that the assault was foreseeable because of the prevalence of crime generally in the area and that a property owner "would know or should have known of the high incidence" of crime in the vicinity.

There is no evidence in the summary-judgment record about what Summit Path actually knew about prior crime in the area. No evidence about whether the offenses were publicized was offered in response to the summary judgment motion. But Summit Path owned both Nox and the parking lots leased by Aitmohand, and evidence regarding both leases is in the summary-judgment

29

record. Therefore, we can conclude that Summit Path knew that there was a nightclub operating until at least 2:00 a.m. across the street from lots used for valet and self-parking.

Considering the summary-judgment evidence in the light most favorable to Watanabe, we conclude that there is evidence sufficient to create a genuine question of material fact about whether Watanabe's assault was foreseeable. For the purpose of our duty analysis, we assume without deciding that Watanabe's assault was foreseeable to Summit Path under the *Timberwalk* factors.

### C.    Watanabe was a licensee.

The third question we must answer when determining whether Summit Path had a duty to Watanabe is his status on the premises. He contends he was an invitee because he parked cars in the parking lots as part of his role managing valet parking for Nox. In his affidavit, Watanabe averred that Hua and Ahmed had permission to use the parking lots leased to Aitmohand and, further, he had paid Aitmohand's attendant for the right to valet park cars on the lot that night. At oral argument, he asserted that he was an invitee because he entered the premises to aid Samsung. Summit Path argues that Watanabe was a trespasser because he was not present with permission or for any benefit of Summit Path. It argues that Watanabe entered the parking lot "to involve himself in an argument that one of Mr.

Aitmohand's parking lot attendants was having with three [four] customers, including Terrance Williams."

The summary judgment evidence is not conclusive about whether Hua and Ahmed had a right to use the parking lots that were leased to Aitmohand. The Nox lease refers to a right to use certain parking identified in an attached diagram, but no such diagram appears in the appellate record. In addition, affidavits from Watanabe and from Malik present contrary explanations of the right to use the parking lot.

The summary-judgment evidence is not in dispute, however, about what brought Watanabe to the premises and eventually led to the assault. He testified that he saw and heard a heated verbal altercation among Samsung and four men, he believed there was a reasonable risk it would escalate to physical violence, and because Samsung is an "old man," Watanabe felt morally compelled to go to his aid. No summary-judgment evidence contradicts this account.

"Public policy favors public-spirited citizens volunteering to rescue persons apparently in dangerous circumstances, as well as attempting to prevent the spread of dangerous conditions that may arise on the property of others." *Pifer v. Muse*, 984 S.W.2d 739, 741 (Tex. App.—Texarkana 1998, no pet.). "[W]hen a dangerous condition arises on an absent owner's property that threatens the safety of another party or the public generally, the law will imply that the owner would acquiesce in

passersby or other witnesses going upon his property in an attempt to rescue persons in danger or to reduce the risk to the property and the public generally."[8] *Id.* at 742–43. Under Texas law, a person who enters a premises to volunteer assistance is treated as an implied licensee in law. *Allen v. Albright*, 43 S.W.3d 643, 648 (Tex. App.—Texarkana 2001, no pet.); *Pifer*, 984 S.W.2d at 741 ("[W]e conclude that Pifer was a volunteer, because the summary judgment evidence shows that he was trying to rescue someone he thought was in danger. A volunteer occupies roughly the same position as an implied licensee."). "Anyone *invited* to transact business or do work on private premises not open to the public normally has the assurance that the place is prepared for him; but one who comes to *volunteer* assistance . . . is treated as a licensee." *Prestwood v. Taylor*, 728 S.W.2d 455, 462 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (quoting Prosser, Law of Torts § 61, at 388–89 (4th ed. 1971)); *see Sw. Bell Tel. Co. v. Johnson*, No. 01-89-00933-CV, 1990 WL 57008, at \*5 (Tex. App.—Houston [1st Dist.] May 3, 1990, no writ) (quoting *Prestwood*, 728 S.W.2d at 462) (mem. op.; not designated for publication).

---

[8]     This is an extension of the public policy embodied in the rescue doctrine, which was historically applied to questions of foreseeability and contributory negligence before the enactment of the proportionate responsibility statute. *See Pifer v. Muse*, 984 S.W.2d 739, 742–43 (Tex. App.—Texarkana 1998, no pet.); *Boss v. Prince's Drive–Ins*, 401 S.W.2d 140 (Tex. Civ. App.—Waco 1966, writ ref'd n.r.e.).

The summary-judgment evidence conclusively demonstrates that Watanabe was a volunteer-rescuer when he went to the parking lot to attempt to deescalate the situation. He also testified that he volunteered to go with the men to see the damage to their vehicles to remove them from Samsung. We hold that Watanabe was an implied licensee when he went to the premises and at the time of the assault.

**D. Summit Path did not owe Watanabe a duty to warn or make safe because the hazard in this case was known to Watanabe.**

Having assumed for the sake of analysis that Summit Path retained control of the premises and that criminal activity was generally foreseeable, we must now determine the parameters of the duty Summit Path owed to Watanabe as an implied licensee.

In *Allen v. Albright*, 43 S.W.3d 643, 645 (Tex. App.—Texarkana 2001, no pet.), Allen ran into a burning house to rescue Albright, an 88-year-old widow. It was undisputed that the fire was an arson caused by a third party, a juvenile offender. *Id.* Allen injured his hip while kicking in the door to Albright's house to rescue her after he heard her cry out for help. *Id.* His hip injury required surgery, caused him to miss work, and required rehabilitation. *Id.* Allen alleged that Albright was aware of the dangerous condition in her burning house and failed to warn him "that the front door was locked, of her location in the house, of the layout of the house, or of the darkness and smoke inside the house." *Id.* at 647. The

33

court of appeals noted that "the risks these conditions imposed were foreseeable to Mr. Allen because before he entered the house, he knew it was on fire, knew the house was dark and smoky, and knew the front door was locked." *Id.*

In this case, the risk of being injured in a physical altercation with the four angry men who had verbally accosted Samsung was foreseeable to Watanabe because before he went to the parking lot, he observed the heated verbal exchange, knew that the area was dark, and believed there was a risk of a physical altercation, which he was hoping to avert. Because Watanabe was a licensee, Summit Path was not liable for injuries to him unless they were "caused by willful, wanton, or grossly negligent conduct" or unless it knew but failed to notify Watanabe of a dangerous condition on the property that was unknown to Watanabe. *See Pifer*, 984 S.W.2d at 742. Because the dangerous conditions were known to Watanabe in this case, Summit Path owed no duty to warn or make the conditions safe for him. *See id.*

We conclude that there is no evidence that Summit Path owed or breached a duty to Watanabe in light of the summary-judgment evidence. Accordingly, we conclude that the trial court correctly granted summary judgment in favor of Summit Path. We overrule Watanabe's fourth issue.

## IV. EA-BBC, Ahmed, and Hua

In the trial court, EA-BBC, Ahmed, and Hua filed a motion for summary judgment that combined traditional and no-evidence arguments. Ahmed and Hua argued that they were not liable in the capacity in which they were sued because they operated Nox as EA-BBC. EA-BBC argued the affirmative defense of limitations.

### A. Watanabe nonsuited EA-BBC.

Watanabe argues that the court erred by granting take-nothing summary judgment in favor of EA-BBC and asks this court to reverse and remand for further proceedings. Watanabe's issue is moot, however, because he previously nonsuited EA-BBC as a matter of law.

Watanabe's assault occurred on March 27, 2013. The statute of limitations for negligence and for premises liability is two years. *See* TEX. CIV. PRAC. & REM. CODE § 16.003; *S.E.A. Leasing, Inc. v. Steele*, No. 01-05-00189-CV, 2007 WL 529931, at *1 (Tex. App.—Houston [1st Dist.] Feb. 22, 2007, pet. denied) (mem. op.). The statute of limitations expired after Thursday, March 27, 2015.

EA-BBC was not named in the original petition filed on July 16, 2014. EA-BBC was added as a defendant in Watanabe's first amended petition and request for disclosure, which was filed and served January 19, 2016, 298 days after

35

limitations expired. On September 1, 2017, EA-BBC answered, pleading a general denial and the affirmative defense of limitations.

Thirteen days later, on September 14, 2017, Watanabe filed his second amended petition. EA-BBC is not named as a defendant and no causes of action are pleaded against EA-BBC in this petition. On October 15, 2017, Watanabe filed and served his third amended petition. Like the original petition and the second amended petition, the third amended petition does not name EA-BBC as a defendant nor does it plead any claims against EA-BBC or otherwise mention the entity anywhere in the pleading.

"An amended pleading supersedes and supplants earlier original pleadings." *Mercure Co., N.V. v. Rowland*, 715 S.W.2d 677, 679 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (citing TEX. R. CIV. P. 65 ("Unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as part of the pleading in the record of the cause . . . .")). "[C]auses of action not contained in amended pleadings are effectively dismissed at the time the amended pleading is filed." *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008). "Parties to a suit are just as effectively dismissed from a suit by omitting their names from an amended pleading as where a formal order of dismissal is entered." *Mercure Co.*, 715 S.W.2d at 679; *see Randolph v. Walker*, 29 S.W.3d 271, 274

(Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("When a party's name is omitted from an amended pleading, he is as effectively dismissed as where a formal order of dismissal is entered."). "Thus, the right to complain on appeal regarding an erroneous ruling dismissing a claim is lost when the aggrieved party files an amended pleading abandoning the claim upon which the trial court ruled." *Namdarkhan v. Glast, Phillips & Murray, P.C.*, No. 05-18-00802-CV, 2020 WL 1969507, at *9 (Tex. App.—Dallas Apr. 24, 2020, pet. denied) (mem. op.) (explaining that amended pleadings filed after adverse summary judgments waived error as to the interlocutory summary judgments).

Watanabe nonsuited his claims against EA-BBC by entirely omitting it from his second and third amended petitions before the court granted summary judgment. We overrule Watanabe's second and third issues.

### B. Ahmed and Hua did not owe a duty to Watanabe because they did not own or control the premises where he was assaulted.

Whether Ahmed and Hua owed a duty to Watanabe is determined by considering three questions: (1) did Ahmed and Hua have control over the premises where Watanabe was assaulted? (2) was the risk of criminal activity foreseeable? and (3) was Watanabe an invitee, licensee, or trespasser?

Ahmed and Hua challenged the existence of a duty in both their traditional and their no-evidence motions for summary judgment. In support of their traditional motion, both Ahmed and Hua provided affidavits in which they each

37

denied having any lease or ownership interest in the lot where Watanabe was assaulted. They each also denied having any business relationship with Summit Path regarding that property. Watanabe's responsive summary-judgment evidence did not refute Ahmed and Hua's evidence that they personally had no control over the premises where Watanabe was assaulted. In addition, Watanabe's summary-judgment evidence affirmatively stated that Nox "did not retain control of the premises" where Watanabe was assaulted. Thus, the summary-judgment evidence does not raise a genuine question of material fact about whether Ahmed and Hua had control of the premises at issue, nor is it more than a scintilla of evidence that Ahmed and Hua had any control over the premises. Accordingly, the trial could have properly granted a take-nothing summary judgment in favor of Ahmed and Hua based on either the traditional or no-evidence summary-judgment grounds regarding the existence of a duty.

On appeal, Watanabe argues that Ahmed and Hua owed him a duty because he was their employee and not an independent contractor and that they should have known of the prevalence of violent crime in the area. Neither of these arguments addresses the preliminary question of whether they had control over the premises where Watanabe was assaulted. As to their argument that they did not own or occupy the premises where the assault took place, Watanabe contends: "This goes to their misuse (or nonuse) of the limited liability form . . . and is insufficient to

38

relieve them of liability." We disagree. Their affidavits are evidence that they had no possession or control of the premises for the purpose of determining whether they owed a duty under premises liability law. Moreover, Watanabe's affidavit concedes that the Nox bar—in whatever form it was operated—did not have possession or control of the premises where he was assaulted.

Finally, Watanabe argues on appeal that the court could not have granted summary judgment on the basis of duty because it previously rejected that ground for summary judgment. He argues that "once an issue has been litigated, that issue may not be relitigated." This is a reference to the law-of-the-case doctrine, and Watanabe's reliance on it is misplaced. The law-of-the-case doctrine is a prudential doctrine under which issues of law that have been fully and finally litigated by a court of last resort will ordinarily not be relitigated. *See Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). The question of whether Ahmed and Hua had a duty to Watanabe was not fully and finally litigated by the earlier denial of their motion for summary judgment. The court denied that motion without explanation about whether the denial was based on the merits, insufficient summary-judgment evidence, or a procedural deficiency. That ruling was interlocutory, and "[a] trial court may change or modify a partial summary judgment at any time before its plenary power expires because it is an interlocutory

39

order." *Fabio v. Ertel*, 226 S.W.3d 557, 562 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

We overrule Watanabe's first issue.

## V.     Aitmohand

In his fifth issue, Watanabe argues that the court erred by granting take-nothing summary judgment in favor of Aitmohand.[9]

In the trial court, Aitmohand filed a combined traditional and no-evidence motion for summary judgment. Watanabe argues that Aitmohand did not attach summary-judgment evidence to his motion. The motion itself states that Aitmohand's affidavit is attached as summary-judgment evidence, but no affidavit is attached to the motion that appears in the record on appeal. Nevertheless, a movant for summary judgment on no-evidence grounds is not required to attach summary-judgment evidence to his motion; he must only "state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i). "The court must grant the motion unless a respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.* In his motion, Aitmohand specifically stated "there is no evidence to support causation." He also challenged the evidence of duty.

---

[9]     Aitmohand did not file a brief in this court. We sent a late-brief notice to Aitmohand's attorney of record on January 23, 2020. Aitmohand has made no appearance in this court.

Watanabe filed a five-paragraph response to Aitmohand's motion for summary judgment. In it he stated that he had sued Aitmohand in 2013, that Aitmohand answered in 2014, the other defendants filed various motions for summary judgment, and the dates the court ruled on the motions. Watanabe argued that Aitmohand did not attach summary judgment evidence and "merely adopted arguments previously presented by the other defendants." Watanabe did not attach any evidence to his response. Instead, he stated:

. . . .

5.      Watanabe incorporates by reference the arguments presented and the evidence filed in response to the multiple motions for summary judgment previously filed in this case. Specifically, Watanabe incorporates by reference the arguments and evidence that he filed into this case on April 13, 2015, January 19, 2016, September 5, 2017, and two (2) responses filed on January 16, 2018.

A summary-judgment response need not marshal the nonmovant's evidence, but at a minimum, it must identify a genuine question of material fact and evidence that supports the nonmovant's position. *E.g.*, *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002) (summary-judgment response met minimum requirements of Rule 166a(i) by pointing out evidence allegedly raising a fact issue on the challenged elements); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 331 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (summary-judgment response was deficient because it stated generally that summary-judgment evidence raised

41

fact issue and incorporated by reference more than 600 pages of evidence). "A party submitting summary judgment evidence must specifically identify the supporting proof on file that it seeks to have considered." *Denson v. JPMorgan Chase Bank, N.A.*, No. 01-19-00107-CV, 2020 WL 7062452, at *3–4 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, no pet.) (mem. op.) (quoting *Nguyen v. Allstate Ins. Co.*, 404 S.W.3d 770, 775 (Tex. App.—Dallas 2013, pet. denied)). "Merely citing generally to voluminous summary judgment evidence in response to either a no-evidence or traditional motion for summary judgment is not sufficient to raise an issue of fact to defeat summary judgment." *Nguyen*, 404 S.W.3d at 776. It is not the role of the trial or appellate court to take on "the onerous task of searching the summary-judgment evidence to see if a genuine issue of fact had been raised as to each challenged element." *San Saba Energy*, 171 S.W.3d at 331.

Watanabe failed to carry his summary-judgment burden by failing to identify which evidence created a fact issue on which challenged elements of his cause of action against Aitmohand. Rather than identifying a genuine question of material fact relevant to the elements challenged by Aitmohand in his no-evidence motion for summary judgment, Watanabe invited the trial court to search all his previous responses to prior motions filed by other parties—more than 250 pages—and to find a genuine question of material fact that would preclude summary judgment. This does not satisfy the minimum requirements for a response to a

42

motion for summary judgment. *See Johnson*, 73 S.W.3d at 207; *San Saba Energy*, 171 S.W.3d at 331. We conclude that the trial court properly granted summary judgment in favor of Aitmohand, and we overrule Watanabe's fifth issue.

## Conclusion

We affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Justices Kelly, Landau, and Hightower.